FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 DEC 20 PM 3:07

LORETTA G. WHYTE
CLERK


SEALED (crossed out)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL., WILLIAM ST. JOHN LACORTE, M.D.<br>PLAINTIFF | CIVIL ACTION<br>NO. **00-3733**<br>SECTION: **SECT. I MAG. 5** |
| VERSUS | MAGISTRATE: |
| OMNICARE, INC.<br>DEFENDANT | FILED <u>IN CAMERA</u><br>AND UNDER SEAL |

## COMPLAINT FOR MONEY DAMAGES AND CIVIL PENALTIES
## UNDER THE FALSE CLAIMS ACT, 31 U.S.C. § § 3729-33

William St. John LaCorte, M.D. relator, by and through undersigned counsel, comes before this Honorable Court on behalf of himself and the United States of America, its departments and agencies, including the Department of Health & Human Services ("DHHS"), bringing this action against Omnicare, Inc., (hereinafter "Omnicare") a foreign corporation authorized to do business in the State of Louisiana, for money damages and civil penalties arising out of defendant's violations of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, which violations are described hereinafter with particularity.

### THE PARTIES

1. Plaintiff, the United States of America, by and through its department, DHHS, particularly the Health Care Financing Administration ("HCFA") within DHHS, has the responsibility, among others, to administer the Medicare, Medicaid Program (Champus), Indian Health Services, GHEA, as well as other federal health programs. The Medicare Program is a health insurance program funded by taxpayers which provides certain health care benefits to particular

individuals including those persons over age 65, disabled individuals or those suffering from end stage renal disease. The Medicaid Program is a health insurance program funded by taxpayers which provides certain health care benefits who are indigent and unable to afford health care benefits.

2. Relator, William St. John LaCorte, M.D., is a citizen of the United States and a resident of the State of Louisiana. Dr. LaCorte admits and treats patients in many hospitals and nursing homes throughout the New Orleans metropolitan area. In his capacity, relator has ordered pharmaceuticals to be administered in connection with the treatment of his patients. In particular, Relator has ordered the administration of drugs which are administered and distributed by Omnicare, and is familiar with the practices of Omnicare in the administration of those drugs. Relator is the original source of relevant information upon which this action is based within the meaning of 31 U.S.C. § 3730(e)(4)(B). Relevant information has been supplied by the relator to the federal government contemporaneous with the filing of this action.

3. Defendant, Omnicare is a foreign corporation that conducts business within the State of Louisiana. Defendant, Omnicare is by its own admission a pharmaceutical care company, which provides pharmacy care services to long term care facilities, as well as providing clinical research to pharmaceutical, biotechnology, and medical device companies.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred by the False Claims Act, 31 U.S.C. §§ 3729-33, and 28 U.S.C. §§ 1331, 1345.

5. Venue in the Eastern District of Louisiana is appropriate under 31 U.S.C. § 3732(a) in that defendant, Omnicare conducts business and sells pharmaceuticals within this district.

## GENERAL ALLEGATIONS

6. Medicaid is a jointly funded, federal-state health insurance program for certain low income and needy people. It covers approximately 36 million individuals, including children, the aged, blind, and/or disabled, and people who eligible to receive federally assisted income maintenance payments.

7. In order to participate in the Medicaid Program, pharmaceutical companies must only charge the lowest price that other prudent and cost conscious buyers would incur for a given drug. Defendant Omnicare has instituted a policy and practice of substituting and switching pharmaceuticals prescribed by physicians, to those on a list, an example of which is attached hereto as "Exhibit A", without prior patient specific authorization.

8. Defendant Omnicare currently provides pharmacy services to more than 630,000 nursing homes and long term residents in over 8,800 skilled nursing facilities and assisted living communities in 43 states. As part of the pharmacy services provided to these facilities, Defendant Omnicare submits claims for reimbursement to federal and state payors or bills nursing home companies under prospective payment reimbursement for skilled nursing services.

9. Defendant Omnicare instituted the practice of not following doctors' patient specific orders and began substituting alternative medication under a mechanism which it falsely alleges is either therapeutic substitution or therapeutic interchange. It supplants and replaces the independent medical judgment of the treating physician caring for an individual patient with those of its own employed consultant pharmacists and staff by replacing orders for pharmaceuticals by physicians to those that it falsely represents to be beneficial or clinically equivalent to those ordered.

10. Omnicare essentially institutes self-referral of prescription medication ordered by non-licensed, unqualified persons or by improper delegation of prescription authority. Omnicare's

employees cause the improper prescriptions of medications which are obtained from its own pharmacy which it in turn improperly bills or causes to be billed to the governments including Medicare, Medicaid, etc.

11. Patients are switched from generic medications to more expensive brand medications.

12. Patients are switched from drugs which have an approved FDA indication and proven efficacy to drugs which do not.

13. Relator contends that the switch being instituted by Omnicare constitutes the unauthorized practice of medicine, and because Omnicare submits claims for reimbursement for the drugs administered under this approved list, constitutes a false claim for reimbursement under government payment programs. Because these drugs being administered are not specifically authorized by a physician to treat a specific patient, they represent unauthorized and unnecessary charges for reimbursement should be denied.

14. Upon information and belief, this practice is nationwide and occurs at numerous facilities throughout the country.

15. Relator has personal knowledge and information that many of the drugs listed on the approved Omnicare list have varying degrees of clinical effectiveness, bioavailability, and side effect profiles which can negatively affect and interfere with patient care.

16. The practice of converting physicians' orders to alternative classes of a particular drug which were never properly or legitimately ordered by physicians and not disclosing to physicians the effects and true cost to the Government Payment Program of the pharmaceuticals has resulted in an expenditure of federal funds above and beyond that which would otherwise have been required. Relator has personal knowledge that physicians who have been solicited by Omnicare have signed physician authorization forms which are not patient specific and result in administration of

medication which is not consistent with the Several State's Boards of Medical Examiners

17. Defendant Omnicare has developed through this pricing scheme a system to defraud Medicare, Medicaid, and other government payment programs, both state and federal, by manipulating and misusing the various certifications of average wholesale price, maximum allowable cost, best price, all as envisioned in the Rebate agreement required by all pharmaceutical manufacturers to be executed before reimbursement can be approved by any government payment program. Upon knowledge and belief Omnicare is receiving deep discounts based on volume and market share of the drugs it caused to be wrongfully prescribed.

18. As a direct consequence of Omnicare's illegal conduct, the government of the United States of America and of the Several States has been required to expend federal funds to pay substantial and excessive amounts for pharmaceuticals over and above the cost at which other facilities can acquire this drug.

## VIOLATIONS OF THE FALSE CLAIMS ACT

19. Continuing through the date of filing of this Complaint, Omnicare and its agents and employees unlawfully and knowingly devised and carried out a scheme to defraud the federal government in general, and the Medicaid Program and other federal health programs in particular, and to impair, impede, obstruct, and defeat the lawful governmental functions of these programs and did unlawfully and knowingly:

    a. Charge and continue to charge fraudulently for prescription pharmaceuticals not approved by a treating physician on a per patient specific authorization basis, to various government

    reimbursement programs;

  b. Make, use, and cause to be made and used, false statements in order to have these false and fraudulent claims paid by the Medicaid Program;

  c. Conspire to defraud the United States by causing false and fraudulent claims to be allowed and to be paid.

20. In furtherance of this scheme to defraud and submit false and fraudulent claims to the United States, Omnicare through its employees, agents, and subsidiaries committed the followings acts, among others:

  a. Unauthorized substitution.

  b. Rendering treatment including substitution and administration without knowledge or consent of patient.

  c. Contracted with consultant pharmacists.

  d. Contracted for pharmacy services in violation of the Medical Practice Acts of the Several States.

  e. Coerce physicians by controlling referrals and access to patients.

21. By such acts, Omnicare has caused a monetary loss to the United States of America, through the Medicaid Program, Medicare, Indian Health Service, Champus, GHEA, and direct payment systems, the amount of which loss is the aggregate of the amounts expended on the following, among others:

  a. The amounts submitted to government reimbursement

programs, including Medicare and Medicaid, for drugs administered to patients without the prior patient specific authorization by a treating physician.

b. Any laboratory testing required to administer the drugs to which these patients have been switched, and any further medical procedure and laboratory, diagnostic, and treatment procedures that become necessary as a result of the switch of pharmaceuticals.

### PRAYER FOR RELIEF

22. WHEREFORE, Relator, on his own behalf and on behalf of the United States, requests and prays for the following relief:

a. That defendant Omnicare make full restitution to the United States of all monies wrongfully expended by the federal government in general and the Medicaid Program in particular, in connection with the defendant's wrongful and unlawful conduct;

b. That defendant Omnicare be assessed all fines, penalties, attorneys' fees and costs, pursuant to 31 U.S.C. §§ 3729 and 3730;

c. That judgment be entered in Relator's favor against defendant in accordance herewith and that Relator, Dr. William St. John LaCorte, be awarded the maximum

percentage of proceeds allowed by law in connection herewith, plus reasonable attorney's fees, interest, and costs; and

d. For all such other general, legal, and equitable relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

A jury trial is requested in this case.

Respectfully submitted,

**VEZINA AND GATTUSO, L.L.C.**
401 Weyer Street, P.O. Box 461
Gretna, Louisiana 70054
(504) 368-5223

_____
J. MARC VEZINA, TA, LSBA NO. 24683

Sherif K. Sakla, LSBA NO. 24871
**THE SAKLA LAW FIRM**
635 St. Charles Avenue
New Orleans, Louisiana 70130

Attorneys for Relator, Dr. William St. John LaCorte

**FILED IN CAMERA
AND UNDER SEAL
NO SUMMONS TO BE
ISSUED UNTIL SEAL LIFTED**

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL., WILLIAM ST. JOHN LACORTE, M.D. **PLAINTIFF** | CIVIL ACTION<br><br>NO.<br><br>SECTION: |
| VERSUS | MAGISTRATE: |
| OMNICARE, INC. **DEFENDANT** | FILED IN CAMERA AND UNDER SEAL |

### VERIFICATION

BEFORE ME, Notary Public, personally came and appeared:

**William St. John LaCorte, M.D.**

relator in the foregoing Complaint, who, after being duly sworn, did depose and state that all of the allegations contained in the foregoing Complaint are true and correct to the best of his knowledge, information, and belief.

_____
WILLIAM ST. JOHN LACORTE, M.D.

Sworn to and subscribed
before me, this 20th day
of December, 2000.

_____
NOTARY PUBLIC

# LOUISIANA STATE BOARD OF MEDICAL EXAMINERS

630 Camp Street, New Orleans, LA 70130
Mailing Address: Post Office Box 30250, New Orleans, LA 70190-0250
www.lsbme.org



Telephone (504) 524-6763
Fax (504) 558-8820
Writer's Direct Dial

E-il _____

September 12, 2000

William St. John LaCorte, M.D., P.M.C.
519 Metairie Road
Metairie, Louisiana 70005

    RE:  Request for Advisory Opinion—
           Automatic Substitution of Medication

Dear Dr. LaCorte:

    During its most recent meeting, the Louisiana State Board of Medical Examiners (the "Board") considered your request for an advisory opinion, respecting the propriety of hospitals and/or hospital pharmacists substituting medication ordered by physicians for their in-patients. As we understand, the automatic substitution occurs without the prescribing physician's prior patient-specific authorization and, in some instances, the medication substituted for that originally prescribed may expose the patient to adverse clinical effects and/or risks [1] The Board has asked that I acknowledge the receipt of your letter and attachments of August 8, 2000 and relate its advice to you.

    It has long been the Board's formally-stated position that any diagnosis, prescription, recommendation or administration of treatment, so as to effect the diagnosis or treatment for or with respect to an individual who is a resident of or located in Louisiana, constitutes the "practice of medicine" in this state, as defined by the Louisiana Medical Practice Act.[2] Thus, irrespective of the euphemism by which a medication substitution is accomplished, as a matter of law to be valid, effective and lawful each prescription or order for the administration of medication—or its substitution—must be issued or given by an authorized practitioner (*i.e.*, a Louisiana licensed physician) with respect to an *individually* identified patient, based on the practitioner's assumption of

---

[1] You express particular concern that the substitution of Pepcid for Zantac is not only more expensive but may adversely affect elderly debilitated patients by giving rise to undiagnosed Pepcid toxicity and central nervous system dysfunction.

[2] LA. REV. STAT. ANN. §§37.1261-1292 (West 1988 & Supp. 1995) In pertinent part, as defined by the Act, the "practice of medicine" means

> the holding out of one's self to the public as being engaged in the business of, or the actual engagement in, the diagnosing, treating curing, or relieving of any bodily or mental disease, condition, infirmity, deformity, defect, ailment, or injury in any human being...whether by the use of any drug, instrument or force...or any other agency or means; or the examining...of any person or material from any person for such purpose....

LA. REV. STAT. §37.1262(1)



EXHIBIT A

William St John LaCorte, M D , P M C.
September 12, 2000
Page 2

responsibility for and diagnosis and treatment of the patient. Legal authority to substitute a medication order, moreover, is not delegable. By definition, an "automatic substitution" does not have reference to a specified patient, is neither based on the treating physician's determination that the substituted medication will not have adverse effects on his patient, nor provide the therapeutic benefits to address the clinical considerations attendant to his diagnosis and serves, in effect, to delegate treatment recommendations and prescriptive authority to unauthorized persons. It is the Board's opinion, then, that automatic substitution of medication, without the prescribing physician's patient-specific authorization, is *per se* inappropriate and unlawful.

A pharmacist who initiates a medication substitution would, in fact, be making assessments of a patient's symptoms and critical determinations as to whether a medication, other than that prescribed by the treating physician, will provide the therapeutic benefits intended without any attendant adverse affects or risks. By definition, such services go well beyond the scope of authority provided to pharmacists by law. Indeed, such determinations are essentially diagnostic and treatment decisions which can have critical implications for the patient and which only licensed physicians can make.

We hope that we have properly understood your inquiry and that the foregoing advice is responsive. If not, please feel free to contact us.

Very truly yours,

LOUISIANA STATE BOARD
OF MEDICAL EXAMINERS

By: *[signature]*
Virginia Gerace Benoist
*Executive Director*

VGB/ln



## Louisiana Board of Pharmacy

5615 Corporate Blvd., Suite 6-E, Baton Rouge, LA 70808-2537
Telephone (225) 925-6496 *** Facsimile (225) 925-6439
www.labp.com  email. labp@labp.com

June 22, 2000

William S. LaCorte, M.D.
St. John Medical Center
519 Metairie Road
Metairie, LA 70005

Dear Dr. LaCorte:

In response to your letter of June 20, wherein you requested "a written response indicating if automatic substitution of Pepcid for Zantac without notifying the attending physician is in compliance with Louisiana State Rules", the answer is no.

Sincerely yours,

*Malcolm Broussard*

Malcolm J. Broussard, RPh
Executive Director



# Campo's Medical Pharmacy

4421 Chastant Street
Metairie, Louisiana 70006
504/455-5778
877/455-5778
504/455-8300 Fax

November 21, 2000

William LaCorte, MD
519 Metairie Road
Metairie, LA  70005

Dear Dr. LaCorte:

Campo's Medical Pharmacy, an Omnicare company, is committed to providing quality pharmacy services to all associated long-term care residents. In conjunction with the Geriatric Pharmacy Institute of the Philadelphia College of Pharmacy and the American Geriatrics Society, Omnicare, Inc. has developed a clinical and cost reference tool, the **Geriatric Pharmaceutical Care Guidelines®.** These guidelines were created with solicited input from physicians, medical directors, administrators, directors of nursing, staff nurses and consultant pharmacists to ultimately enhance the ability of all clinical professionals to provide superior quality health care to the elderly, while simultaneously reducing cost. From the guidelines, Omnicare, Inc. has products that are preferred for use in the elderly.

Your permission in allowing us to implement these guidelines and initiatives listed in the attached letter will result in improved health care and quality life for your long-term care residents and allow for significant cost savings to the payer. We ask that you consider the clinical initiatives in the attached **Physician Authorization Letter** and return the original letter to us in the enclosed envelope.

If you have not yet received a copy or further information is needed, a copy of the **Omnicare Geriatric Pharmaceutical Care Guidelines®** can be forwarded to you upon request. If there are any questions or comments regarding Omnicare's preferred products, please feel free to contact us. As always, your comments are welcomed and valued. Finally, we thank you in advance for your time and cooperation.

Respectfully,

*[signature]*

Erin Graves, Pharm.D.
Consultant Pharmacist
Consultant Coordinator

An **Omnicare** Company

EXHIBIT B



# Campo's Medical Pharmacy

4421 Chastant Street
Metairie, Louisiana 70006
504/455-5778
877/455-5778
504/455-8300 Fax

## PHYSICIAN AUTHORIZATION LETTER

By checking the options below and signing this document you will authorize Campo's pharmacists to modify existing orders and dispense the following alternative medications based on interchange protocols for your patients residing in Long Term Care Facilities. This process promotes medication management which is therapeutically beneficial or clinically equal and forwards cost effectiveness to the payer whenever possible. It will also reduce the number of individual drug regimen review comments sent by the consultant pharmacist. Conversion protocols for these therapeutic interchanges can be forwarded to you upon request.

**YES    NO**

____  ____   **ACE INHIBITOR INTERCHANGE**
(Interchange to occur at point of dispensing or via consultant
based on availability of appropriate diagnosis)
- Zestril® will be dispensed in lieu of other ACE inhibitors
  Monitoring will be initiated as follows.
- BP q shift x 72 hours then weekly.
- Serum potassium and creatinine/BUN should be checked periodically after initiating or modifying therapy and status will be monitored by consultant pharmacist.
  *Capoten® (captopril) will not be interchanged when unaccompanied by a diagnosis or with a documented diagnosis of diabetic nephropathy.

____  ____   **ADALAT CC INTERCHANGE**
(Interchange to occur via consultant based on medical record review
if order is unaccompanied by a diagnosis)
- Adalat CC® will be dispensed in lieu of an equivalent dose of Procardia XL® for a diagnosis of hypertension only.

**ATYPICAL ANTIPSYCHOTIC INTERCHANGE**
(If interchange occurs prospectively, antipsychotic interchange may be done only for new orders on existing residents defined as those in the facility for five days or longer. If retrospective, the consultant pharmacist may use their clinical judgment based upon the availability of resident specific data.)

____  ____   Risperdal® (risperidone) will be dispensed in lieu of Zyprexa® and Seroquel® for a diagnosis of Dementia (Alzheimer's /OMS) only, with a starting dose of Risperdal® 0.5mg QD. Risperdal® will also be dispensed in lieu of Mellaril, unless resident has a documented diagnosis of schizophrenia and a failure to show an acceptable response to adequate courses of treatment with other antipsychotic drugs.

____  ____   **COX-2 INHIBITOR INTERCHANGE**
(Interchange to occur at point of dispensing)
- Celebrex® (celecoxib) will be dispensed in lieu of an equivalent dose of Vioxx®

____  ____   **FLUOROQUINOLONE INTERCHANGE**
(Interchange to occur at point of dispensing) Levaquin® (levofloxacin) will be dispensed in lieu of an equivalent dose of other fluoroquinolones. Trovan® may only be interchanged after diagnosis verification.

An Omnicare Company

### HMG CO-A REDUCTASE INHIBITOR INTERCHANGE
(Interchange to occur at point of dispensing)
- Lipitor® will be dispensed in lieu of Pravachol®, Zocor® and Mevacor®.
  - All doses (except Zocor® 40mg) will be converted to Lipitor® 10 mg daily.
  - Zocor® 40mg will be converted to Lipitor® 20 mg

### H2 RECEPTOR ANTAGONIST INTERCHANGE
(Interchange to occur at point of dispensing)
- Omnicare Select H2 Receptor Antagonist of Choice, Ranitidine, will be dispensed in lieu of other solid and liquid H2 Receptor antagonists. (Note: Cimetidine will not be eligible to be selected as Omnicare's H2 of Choice due to it's inferior clinical ranking in Omnicare's Geriatric Pharmaceutical Care Guidelines.)

### LEVOTHYROXINE INTERCHANGE
(Interchange to occur via consultant based on medical record review)
- Levothyroxine of Choice will be dispensed in lieu of Synthroid® on a mg per mg basis. Following a change from one manufacturer to another, consultants must monitor the need for and/or request appropriate follow-up thyroid monitoring according to the combined clinical judgment of the pharmacist and physician.

### POTASSIUM CHLORIDE INTERCHANGE
(Interchange to occur at the point of dispensing)
- Sustained Release Potassium Preparation of Choice will be dispensed in lieu of other sustained release potassium preparations on a mEq. per mEq basis.

### PROTON PUMP INHIBITOR INTERCHANGE
(Interchange to occur at the point of dispensing)
- Proton Pump Inhibitor of Choice, Prevacid will be dispensed in lieu of an equivalent dose of other PPI's.

### SELEGILINE INTERCHANGE
(Interchange to occur at the point of dispensing)
- Selegeline tablets will be dispensed in lieu of the equivalent dose of Eldepryl

### PHENYTOIN INTERCHANGE
(Interchange to occur at point of dispensing)
- Phenytoin 125mg/5ml suspension (prompt acting) will be dispensed in lieu of the equivalent dose of Dilantin 125mg/5ml suspension (prompt acting): Upon the change from one manufacturer to another, Phenytoin levels will be monitored accordingly by the physician and consultant pharmacist.

### WARFARIN INTERCHANGE
(Interchange to occur at point of dispensing)
- Warfarin tablets, will be dispensed in lieu of the equivalent dose of Coumadin tablets; Upon the change from one manufacturer to another, laboratory values will be monitored accordingly by the physician and consultant pharmacist.

### OYSTER SHELL CALCIUM WITH VITAMIN D INTERCHANGE
(Interchange to occur at point of dispensing)
- Oyster Shell Calcium with Vitamin D 500mg/125iu will be dispensed in lieu of other calcium carbonate (i.e. Os-Cal), calcium citrate (i.e. Citracal) with vitamin D products at equivalent dose as ordered by physician.

2

**UNACCEPTABLE DRUG INTERCHANGE:**

    _____     _____     **LORAZEPAM INTERCHANGE**
(Interchange to occur at point of dispensing)
- As Valium (Diazepam) has been cited as an inappropriate drug for use in the elderly by HCFA (except for adjunct in pain management or for seizure control), **Ativan (Lorazepam)** will be dispensed in lieu of an equivalent dose of Diazepam.

    _____     _____     **LORTAB 2.5MG / TYLENOL 650MG INTERCHANGE**
(Interchange to occur at point of dispensing)
- As Darvocet, Darvon and Wygesic (Propoxyphene) have been cited as inappropriate drugs for use in patients over the age of 65 years, **Lortab 2.5/500mg** tablets will be dispensed in lieu of the propoxyphene containing medication, using the original directions as given by the physician with the additional notation of "for pain not relieved by Tylenol."

**My dated signature below substantiates my approval for all therapeutic interchanges checked or otherwise indicated as "Approved/Yes" on this document.**

_____     _____
                    **PHYSICIAN SIGNATURE**                     **DATE**

_____
              **PHYSICIAN NAME (PRINT)**